THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
WILLIAM W. GILL, DEFENDANT-APPELLANT.

Argued June 7, 1966—Decided July 6, 1966.

*Mr. Burton L. Fundler* argued the cause for appellant (*Messrs. Mirne, Nowels & Fundler,* attorneys).

*Mr. Thomas L. Yaccarino,* Assistant County Prosecutor, argued the cause for respondent (*Mr. Vincent P. Keuper,* Monmouth County Prosecutor, attorney).

PER CURIAM. The defendant was convicted before a local magistrate of violating the "hit and run" statute. *N. J. S. A.* 39:4–129. He appealed to the County Court where, after a trial *de novo*, he was again found guilty and was directed to pay a fine of $25 plus court costs. On further appeal, his conviction was affirmed in the Appellate Division. *State v. Gill,* 89 *N. J. Super.* 104 (*App. Div.* 1965). We granted certification on the defendant's application. 46 *N. J.* 217 (1966).

The defendant was on his way home from work shortly after 1 A. M. on June 25, 1964. He was driving his own automobile and struck an unoccupied vehicle which was parked on Norwood Avenue in Avon. The impact was sufficiently severe to cause substantial damage to the parked vehicle and to impel it across the public sidewalk. The defendant emerged from his car, made note on a piece of paper of the license

number of the damaged automobile, and remained in the vicinity for about 10 or 15 minutes. There was no one about and he made no effort to telephone or reach the Avon police station, which was located a few blocks away, nor did he leave any note in the damaged automobile or elsewhere. He testified that after the accident he "didn't feel good" and drove to his home nearby, still within Avon. He slept and at about 7:45 A. M. he and his father went to the Avon police headquarters to report the accident. However, the police had already learned about it from a neighbor, who had heard the crash and had telephoned. In response to that call, a police officer arrived at the scene of the accident at 1:40 A. M., but the defendant, whose identity was then unknown to the neighbor or the police, was nowhere about.

█ Section 129 (*N. J. S. A.* 39:4–129) sets forth the duties to be discharged at the very time of the accident by the automobile driver who causes injury to someone's person or property. It is to be differentiated from his independent reporting duties under section 130 (*N. J. S. A.* 39:4–130) which is not directly involved in these proceedings. Section 129 is comparable to hit and run statutes throughout the country, though it is not nearly as well drawn or as clearly expressed as most of them. Its purpose is to prohibit the automobile driver involved in an accident from evading his responsibilities by escaping or departing before his identity is made known. See *State v. Richardson,* 23 *Conn. Supp.* 284, 181 *A. 2d* 609, 611 (*Cir. Ct. App. Div.* 1962); *cf. People v. Hampton,* 22 *Misc. 2d* 432, 197 *N. Y. S. 2d* 959, 961 (*Westchester County Ct.* 1960); *State v. Severance,* 120 *Vt.* 268, 138 *A. 2d* 425, 428 (1958). Its constitutionality is not under attack here, and elsewhere charges of indefiniteness and other infirmities have been consistently rejected. See *State v. Milligan,* 87 *Ariz.* 165, 349 *P. 2d* 180 (1960); 7 *Am. Jur. 2d, Automobiles and Highway Traffic,* § 246 (1963); Annot., "Constitutionality, construction and effect of statutes in relation to conduct of driver of automobile after happening of accident," 101 *A. L. R.* 911, 918 (1936).

The defendant contends that section 129 "is penal in nature and should be strictly construed" as inapplicable here. While some judicial opinions suggest strict construction (*Butler v. Jersey Coast News Co.*, 109 *N. J. L.* 255, 258 (*E. & A.* 1932)), others suggest a liberal approach in the light of the wholesome statutory design to afford broad protection to members of the general public. See *People v. Pinnock*, 207 *Misc.* 1097, 142 *N. Y. S.* 2d 771, 774 (*Ct. Spec. Sess.* 1955); cf. *People v. Stansberry*, 51 *Cal. Rptr.* 403, 405–07 (*D. Ct. App.* 1966). In any event, whatever be the rule of construction, it is subordinate to the goal of effectuating the legislative plan as it may be gathered from the enactment "when read in the full light of its history, purpose and context." *Lloyd v. Vermeulen*, 22 *N. J.* 200, 204 (1956); cf. *State v. Gill, supra*, 89 *N. J. Super.*, at p. 108. Interpretations which lead to absurd or unreasonable results are of course to be avoided (*Robson v. Rodriguez*, 26 *N. J.* 517, 528 (1958)), and so far as the terms of the legislation and proper consideration of the interests of those subject to it will fairly permit, the statutory objective is to be fulfilled. See *State v. Provenzano*, 34 *N. J.* 318, 322 (1961).

Section 129 directs that when the driver of a vehicle is knowingly involved in an accident resulting in personal injury or property damage he shall (1) immediately stop the vehicle at the scene of the accident, (2) give his name and address and exhibit his license and registration certificate to the injured person and the driver or occupant of the vehicle collided with "and to any police officer or witness of the accident," and (3) render assistance to the injured person. In *Lo Biondo v. Allan*, 132 *N. J. L.* 437, 439 (*Sup. Ct.* 1945), the driver of a car felt a bump under the wheels and knew she had run over something. She did not stop but drove to her home nearby, returned to the scene, discovered that she had struck a child, and then reported the matter to the police. She was convicted for having violated section 129 and her conviction was sustained by the former Supreme Court which stressed that she had breached her statutory duty by not stop-

ping immediately when she knew she had run over something, and that her later conduct in nowise absolved her. Compare *People v. Schauffert*, 277 *App. Div.* 1042, 100 *N. Y. S. 2d* 320 (1950) with *People v. Hampton, supra*, 22 *Misc. 2d* 432, 197 *N. Y. S. 2d*, at *p.* 961.

In *State v. Severance, supra*, the defendant drove his automobile into a sign post at a Richfield gasoline station and did substantial damage to it. It was 1 A. M. and he drove home without notifying anyone or taking any steps towards disclosing his identity. At 4 A. M. he was interviewed by a state trooper and acknowledged that he had not stopped and had not left his residence and license numbers. At 8:30 A. M. his mother notified the Richfield distributor of the accident and at 5 P. M. the defendant himself notified an employee at the gasoline station. The defendant was tried and convicted by a jury of having failed to stop and identify himself. In sustaining the conviction, the court noted that the hit and run statute simply imposed duties which all drivers with good conscience would in any event observe, and it stressed that "[o]n-the-spot identification, so far as possible, is intended by the statute." 138 *A. 2d*, at *p.* 429.

The defendant Gill acknowledges that when he struck the unoccupied parked automobile he was under a duty under section 129 to stop and properly identify himself. But he apparently contends that since no one was around, his duty was discharged by stopping, waiting a while, and then going home to sleep and report the accident thereafter. This construction would make little sense in the light of the clear statutory objective and its high concern with contemporaneity, and we fully agree with the Appellate Division that it is not called for by either the history or terms of the statute. See *State v. Gill, supra*, 89 *N. J. Super.*, at *pp.* 108–10. It would of course have been preferable for the Legislature to have dealt in specific terms with the driver's duty upon striking an unattended vehicle as was done in Sec. 10–105 of the Uniform Vehicle Code (1962) and in many enactments elsewhere. See *N. Y. Vehicle and Traffic Law*, McKinney's Con-

sol. Laws, c. 71, § 600; *Pa. Stat. Ann.* tit. 75, § 1027 (1960); *Mich. Stat. Ann.*, § 9.2320 [Comp. Laws 1948, § 257–620, Pub. Acts 1949, No. 300] (1960); *Iowa Code Ann.*, § 321.264 (1949); see also *Scott v. District of Columbia*, 55 *A. 2d* 854 (*D. C. Mun. Ct. App.* 1947); *State v. Richter*, 3 *Conn. Cir.* 99, 208 *A. 2d* 359 (*Cir. Ct. App. Div.* 1964). That it did not do so may not be taken to mean that it intended to deny protection to owners of unattended vehicles but rather that it understood its language to be sufficiently comprehensive to protect them equally with owners of attended vehicles.

█ When the defendant struck the parked automobile he stopped immediately in compliance with section 129. There was admittedly no driver or other occupant of the damaged vehicle and his express responsibility under the statute was to identify himself to "any police officer or witness of the accident." There being no witness of the accident and no police officer at the scene, his implicit responsibility under the statute was to seek out a police officer. See *State v. Gill, supra*, 89 *N. J. Super.*, at *p.* 109. This he could readily have done by driving to the nearby police station or, better yet, by telephoning the station and awaiting the police officer's arrival. Indeed, if he had conscientiously concluded that, under the particular circumstances confronting him, both of those courses were impractical (*cf. Mazzella v. Lee*, 12 *N. J. Misc.* 158, 159–60 (*Sup. Ct.* 1934)) he could easily have left a suitable identification note on the parked automobile and that might well have constituted a sufficient legal excuse. See *State v. Gill, supra*, 89 *N. J. Super.*, at *p.* 110; *cf. People v. Stipp*, 190 *Cal. App. 2d Supp.* 883, 12 *Cal. Rptr.* 476, 478 (*App. Dep't.* 1961). He took none of these reasonably apparent and wholly practical courses but chose instead to drive home without having identified himself to anyone or in any manner. His conduct fell within the contemplated proscription of section 129 and his conviction thereunder was legally sound.

Affirmed.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For reversal*—None.